IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OSPREY CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION FILE |
| ) | |
| IBIS INTERNATIONAL, INC., ) | NO. _____ |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |
| ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Osprey Corporation ("Plaintiff" or "Osprey") files this Complaint and Jury Demand against Defendant Ibis International, Inc. ("Ibis"), and states as follows:

### NATURE OF ACTION AND PARTIES

1. This is a complaint for damages and equitable relief arising from Ibis' willful acts of infringement of one or more claims of United States Patent Nos. 8,597,391(the "391 Patent") and 8,679,236 (the "236 Patent"). True and correct copies of the 391 Patent and 236 Patent are attached hereto as Exhibits A and B.

## THE PARTIES

2.      Plaintiff Osprey is a corporation organized and existing under the laws of Georgia with its principal place of business at 1835 Briarwood Road, NE, Atlanta, GA 30329.  Plaintiff Osprey is the current assignee and owner of the 391 Patent and 236 Patent and is entitled to enforce all rights arising therefrom, including the right to prevent infringement of the patents.

3.      Defendant Ibis is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business at PO Box 670, Hoschton, GA 30548, and may be served through its registered agent, Steve Southern, at 9663 Jackson Trial Road, Hoschton, Georgia 30548.  Defendant Ibis is in the business of manufacturing and/or selling process air filtration systems, including but not limited to the Ibis G-3 Drum Filter, in interstate commerce and in this judicial district, and is a direct competitor of Osprey.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a), because this is a case arising under the patent laws of the United States (35 U.S.C. § 1, *et seq*., and particularly 35 U.S.C. § 271), and also pursuant to 28 U.S.C. § 1331, because this matter involves a federal question.

5.  This Court has personal jurisdiction over Ibis because it resides within this judicial district and because it has, either directly or through agents located in this judicial district, made, used, sold, offered for sale, marketed, distributed, or imported into the United States products that infringe, either directly or indirectly, one or more claims of the 391 Patent and 236 Patent.

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and § 1400(b) because Ibis resides in this judicial district within the meaning of such provisions and because Ibis has transacted business and committed acts of patent infringement in this judicial district.

## PATENTS AT SUIT

7.  On December 3, 2013, the United States Patent and Trademark Office duly and legally issued the 391 Patent, entitled "Filtration System and Method," which is assigned to Osprey.  The 391 Patent is based on U.S. patent application No. 13/445,767, which was filed on April 12, 2012, and claims priority to provisional application No. 61/517,004, which was filed on April 12, 2011.

8.  On March 25, 2014, the United States Patent and Trademark Office duly and legally issued the 236 Patent, entitled "Filtration System and Method," which is assigned to Osprey.  The 236 Patent is based on U.S. patent application No. 13/841,579, which was filed on March 15, 2013 as a continuation-in-part of

U.S. patent application No. 13/445,767, which was filed on April 12, 2012, and claims priority to provisional application No. 61/517,004, which was filed on April 12, 2011.

## FACTUAL BACKGROUND

9. Since 1974, Osprey has served as a global leader in process air filtration and recycling systems for the soft disposables industry (*e.g.*, disposable diapers and other disposable sanitary products).[1] These process air filtration and recycling systems are integral to the manufacturer of such soft disposables.

10. The main absorbent part of most disposable sanitary products or disposable diapers is the pad, or core, which is often made of wood pulp that has been fiberized by a special mill designed to handle fluffing pulp. Historically, the pad was usually made of wood pulp. It is now more common that the pad is made of some combination of wood pulp and absorbent polymer.

11. After the pulp is fiberized, the resulting pulp fluff is drawn out of the mill onto a forming screen. The pad is formed on the screen in a forming chamber, in which the pulp fluff and polymer is placed on the forming screen and is forced into a compact configuration by suction of air through the screen. After the pad is

---

[1] Osprey also offers a wide range of waste handling and recycling systems for the plastics, tissue, and nonwovens industries as well.

formed on the screen, it moves through a set of profiling rolls and on to the folding and packaging part of the converting machine.

12. The air that is pulled through the forming screen from the pulp mill contains small amounts of fiberized pulp fluff and, in many cases, absorbent polymer. Experience has shown that the amount of the waste fluff and/or polymer that comes through the forming screen is 2% or 3% of the total amount of fluff and/or polymer that enters the forming chamber.

13. As such, products and systems have been developed for filtering the waste particulates out of the air exiting the forming chamber. These products and systems may recover the waste particulates that come through the forming screen for return to the mill or forming chamber. The recovered particulates that are returned to the process may represent a substantial cost savings to the manufacturer.

14. Additionally, the products and systems may clean the air that comes from the forming screen and return the air to the plant area or vent the air outside of the plant. Managing waste material generated by production equipment has become a necessity in 21st century manufacturing plants, as companies prioritize concerns about in-plant environment and impact on the local environment.

15. Since its beginning, Osprey has been a leader and innovator with respect to process air filtration and recycling systems for the soft disposables industry. For example, in 1981, Osprey sold an innovative, specially designed rotary drum filter to a diaper manufacturer in Macon, Georgia. The Osprey drum filter was an instant success. Today, there are over 2,000 Osprey filters worldwide.

16. Osprey has not rested on the initial success of its rotary drum filter. Osprey's experienced team of engineers and manufacturing professionals continued, and continues to this day, to innovate and transform Osprey's process air filtration and recycling systems to meet the ever-changing demands of the soft disposables industry and further improve in-plant environments and surrounding local environments as well.

17. In line with Osprey's continued innovation and focus on the environment, Osprey has received several U.S. patents related to its innovative air filtration and recycling systems and methods, such as the Phoenix Rotary Drum Filter and the Multi-Line Drum Filter System.

18. Continuing to improve on its air filtration and recycling systems and methods, in 2011 Osprey launched a new filtration product called the Blue-Sky Filter. Osprey received recognition from the U.S. Patent and Trademark Office in

the form of the 391 Patent and 236 Patent related to various aspects of this new Blue-Sky Filter.

19.     In particular, the inventions of the 391 Patent and 236 Patent concern advancements regarding multi-stage downstream filtration after a rotary drum filter, as well as a method for controlling the vacuum across the overall system. The 391 Patent claims a multi-stage drum filtration system comprising at least one passive filter stage and a HEPA filter stage downstream of a rotary drum filter, as well as a main fan coupled to the stages that creates a vacuum on an inlet side of the rotary drum filter, along with pressure sensor and a controller, wherein the controller is configured to receive input from the pressure sensor and transmit a speed signal to the main fan.  The 236 Patent claims a method of retrofitting a rotary drum filter that generally comprises coupling at least two passive filter stages to the rotary drum filter, installing a pressure sensor, and replacing filtration media on the rotary drum with higher density filtration media.  Alternative additional retrofitting steps include:  removing a final filter stage prior to installing the passive filter stages, installing a variable frequency drive in a control panel, or coupling a HEPA filter stage to the second passive filter stage.

20. Osprey's overall history of innovation and development is well-known and appreciated in the industry, including by the President of Ibis, Mr. John Cork, a former founder and president of Osprey.

21. Unlike Osprey, Ibis, which was founded in the early 1990s by Mr. Cork, has generally sought to emulate the advancements of others in the industry, as opposed to independent innovation. In particular, Ibis has previously introduced filters and systems that are similar in appearance as well as function to those designed, developed, manufactured, and patented by Osprey.

22. As a result of Ibis' apparent business model, Osprey took affirmative steps to notify Ibis of its innovations related to Osprey's Blue-Sky Filter. In particular, in a letter dated September 9, 2011, counsel for Osprey informed Ibis of Osprey's then recently launched new Blue-Sky Filter, and that Osprey had filed a patent application covering various aspects of the newly designed filter. *See* Exhibit C.

23. On December 22, 2014, after issuance of both the 391 Patent and 236 Patent, each of which includes claims directed to certain features, systems, and/or methods that encompass Osprey's Blue-Sky Filter, counsel for Osprey notified Ibis of the issued patents and further notified Ibis that, based on marketing materials disseminated by Ibis, a product offered by Ibis in direct competition with the

Osprey Blue-Sky Filter—Ibis' G-3 Drum Filter —appeared to infringe at least one claim of the 391 Patent or the 236 Patent. *See* Exhibit D. In support of its letter correspondence, counsel for Osprey included copies of the 391 Patent and 236 Patent[2], as well as copies of the relevant Ibis marketing materials, including a 38-page Ibis document from Ibis' website entitled "The Anatomy of a Drum Filter." *See id*. Ibis subsequently removed this document from Ibis's website.[3]

24. In a January 5, 2015 responsive letter, counsel for Ibis requested "specific details of how [Ibis's] products infringe upon" Osprey's patents. *See* Exhibit E. Ibis' counsel explained that "a full explanation of the precise infringement claimed by [Osprey] [was] needed to identify the issue." *See id.* In defense of the infringement notice, Ibis' counsel also stated that it was Ibis' "belief that the products and systems used and sold by Ibis are utilizing technology that has been in the marketplace more than twenty years." *See id.*

25. On January 26, 2015, in reply to Ibis' January 5, 2015 responsive letter, counsel for Osprey provided Ibis with an exemplary claim chart explaining

---

[2] The copies of the 391 Patent and 236 Patent included with the December 22, 2014 correspondence have been removed from Exhibit D attached hereto to avoid voluminous duplication. The copies of the 391 Patent and 236 Patent attached hereto as Exhibits A and B are the same as the copies included with the December 22, 2014 correspondence.

[3] This document has since been re-added to Ibis's website at least as recently as April 29, 2015. *See infra* ¶ 29.

how the Ibis product, based on Ibis' marketing materials attached to Osprey's December 22, 2014 letter correspondence, infringed claim 1 of the 391 Patent, as requested by Ibis.[4] *See* Exhibit F. In view of this exemplary claim chart, Osprey asked Ibis to explain why it contends that its activity did not infringe any claim of the 391 Patent or 236 Patent. *Id.* Osprey additionally asked Ibis to identify the pre-existing technology it alleged Ibis' products were practicing. *Id.*

26. Osprey did not receive a response to its January 26, 2015 letter correspondence to Ibis. As a result, on March 10, 2015, counsel for Osprey sent counsel for Ibis a follow-up letter correspondence inquiring about Ibis' review and response to Osprey's January 26, 2015 letter correspondence to Ibis. Counsel for Osprey requested a response from Ibis "within 15 days of receipt," or March 26, 2015. *See* Exhibit G.

27. More than two weeks after this deadline had passed, on Friday, April 10, 2015, counsel for Ibis telephoned counsel for Osprey to inform Osprey that Ibis was preparing a response to Osprey's March 10, 2015 letter correspondence. Following further communication between counsel, on April 17, 2015, counsel for Ibis affirmatively stated in writing that it would formally respond "within 10 days,"

---

[4] This January 26, 2015 correspondence also included copies of the file wrappers for both the 391 Patent and 236 Patent. Those copies, however, are not included in Exhibit F attached hereto to minimize the volume of materials submitted to the Court.

or April 27, 2015.  *See* Exhibit H.  Counsel for Osprey confirmed that Osprey would grant Ibis the additional 10 days within which to formally respond to Osprey's March 10, 2015 letter correspondence. *See id.*

28. To date, Osprey has yet to receive a formal response from Ibis, or a request for additional time to prepare a formal response.  In other words, after extended delay by Ibis, Ibis still fails to explain how and why it contends that its activity does not infringe any claim of the 391 Patent or 236 Patent.

29. Meanwhile, with knowledge of Osprey's patent rights, Ibis continues to market and promote the infringing G-3 Drum Filter on Ibis' website and in trade magazines. *See* Exhibits I, J, K.

## DEFENDANTS' INFRINGEMENT

30. Upon information and belief, Defendant Ibis has directly infringed, or induced or contributed to the infringement of, one or more claims of the 391 Patent and 263 Patent by making, using, selling, or offering for sale in this judicial district and elsewhere or importing into the United States certain process air filtration systems, including but not limited to the Ibis G-3 Drum Filter.

31. Ibis' infringement has damaged Osprey, in an amount yet to be ascertained, and has irreparably harmed, and continues irreparably to harm,

Osprey, including by usurping Osprey's sales and business opportunities, eroding Osprey's market share and prices, and damaging Osprey's reputation and goodwill.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 8,597,391

32. Osprey realleges and incorporates by reference paragraphs 1–31 of this Complaint as if fully set forth herein.

33. Upon information and belief, Defendant Ibis has infringed and continues to infringe one or more claims of the 391 Patent, either literally or under the doctrine of equivalents, by making, using, offering for sale, or selling products that embody each element of at least one of the claims of the 391 Patent, including but not limited to the Ibis G-3 Drum Filter.

34. Upon information and belief, Defendant Ibis has also knowingly and intentionally induced, and continues knowingly and intentionally to induce, others in this judicial district and throughout the United States to use products that Ibis knows to infringe one or more claims of the 391 Patent, including but not limited to the sales and promotion of the Ibis G-3 Drum Filter.

35. Upon information and belief, Defendant Ibis has also contributed to the infringement of one or more claims of the 391 Patent and continues to do so by making, using, offering for sale, or selling products which Ibis specially

manufactures, promotes for use, and uses for process air filtration systems that embody each element of at least one of the claims of the 391 Patent.

36. Ibis' past and continuing infringement of the 391 Patent has damaged Osprey in an amount to be determined at trial.

37. Ibis' past and continuing infringement of the 391 Patent has irreparably harmed, and continues irreparably to harm, Osprey. Ibis' infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

38. Ibis' infringement has been and continues to be willful, intentional, and with knowledge of the existence of the 391 Patent and Osprey's general patent rights. Osprey is thus entitled to enhanced damages pursuant to 35 U.S.C. § 284, and attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT II

### INFRINGEMENT OF U.S. PATENT NO. 8,679,236

39. Osprey realleges and incorporates by reference paragraphs 1–38 of this Complaint as if fully set forth herein.

40. Upon information and belief, Defendant Ibis has infringed and continues to infringe one or more claims of the 236 Patent, either literally or under the doctrine of equivalents, by making, using, offering for sale, or selling products

and/or services that embody each element of at least one of the claims of the 236 Patent.

41. Upon information and belief, Defendant Ibis has also knowingly and intentionally induced, and continues knowingly and intentionally to induce, others in this judicial district and throughout the United States to retrofit rotary drum filters in a manner that Ibis knows to infringe the one or more claims of the 236 Patent.

42. Upon information and belief, Defendant Ibis has also contributed to the infringement of one or more claims of the 236 Patent and continues to do so by making, using, offering for sale, or selling products and/or services which Ibis specially manufactures, promotes for use, and uses for retrofitting rotary drum filters in a manner that Ibis knows to infringe one or more claims of the 236 Patent.

43. Ibis' past and continuing infringement of the 236 Patent has damaged Osprey in an amount to be determined at trial.

44. Ibis' past and continuing infringement of the 236 Patent has irreparably harmed, and continues irreparably to harm, Osprey. Ibis' infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

45. Ibis' infringement has been and continues to be willful, intentional, and with knowledge of the existence of the 236 Patent and Osprey's general patent

rights. Osprey is thus entitled to enhanced damages pursuant to 35 U.S.C. § 284, and attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## REQUEST FOR JURY TRIAL

Osprey hereby requests a trial by jury on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Osprey respectfully requests that the Court:

A.     Declare that Ibis has directly infringed, induced others to infringe, and/or contributed to the infringement of the 391 Patent, and that Ibis has willfully infringed Osprey's patent rights, as asserted herein;

B.     Declare that Ibis has directly infringed, induced others to infringe, and/or contributed to the infringement of the 236 Patent, and that Ibis has willfully infringed Osprey's patent rights, as asserted herein;

C.     Permanently enjoin Ibis from directly infringing, inducing others to infringe, or contributing to the infringement of the 391 Patent, pursuant to 35 U.S.C. § 283, or such other equitable relief the Court determines is warranted;

D.     Permanently enjoin Ibis from directly infringing, inducing others to infringe, or contributing to the infringement of the 236 Patent, pursuant to 35 U.S.C. § 283, or such other equitable relief the Court determines is warranted;

E.       Award Osprey damages in an amount to be proved at trial to compensate Osprey for damages caused by Ibis' direct and indirect infringement of the 391 Patent and 236 Patent;

F.       Treble the damages awarded to Osprey, as provided by 35 U.S.C. § 284;

G.       Award Osprey its reasonable attorneys' fees and litigation expenses, as provided by 35 U.S.C. §285;

H.       Award Osprey prejudgment interest and costs pursuant to 35 U.S.C. § 284; and

I.       Award Osprey such other and further relief as the Court may deem appropriate.

Respectfully submitted, this 30th day of April, 2015.

/s/ Joshua H. Lee
Vaibhav P. Kadaba
Georgia Bar No. 405727
Joshua H. Lee
Georgia Bar No. 489842
KILPATRICK TOWNSEND &
STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia  30309-4530
Phone: (404) 815-6500
Fax: (404) 815-6555

ATTORNEYS FOR PLAINTIFF